**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David A. Kester, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CitiMortgage, Inc.; CR Title Services, Inc.; and Does 1 to 25, inclusive,<br><br>Defendants. | No. CV-15-00365-PHX-NVW<br><br>**ORDER** |

This is a putative class action of foreclosed homeowners for statutory damages under A.R.S. § 33-420(A). The statute penalizes persons claiming an interest or lien in real property for recording a document "knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid . . . ." For each such document, the statute imposes a $5,000 penalty.

Plaintiff alleges three documents relating to the trustee's sale of his house were recorded in violation of the statute because they were acknowledged before a notary whose commission had been revoked ten days earlier. He also alleges this defect in acknowledgment affected hundreds or perhaps thousands of other documents. On Plaintiff's theory, statutory penalties could run into the millions of dollars.

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint (Doc. 16) for failure to state a claim upon which relief can be granted. The Motion will be granted.

I. **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, tests the legal sufficiency of the complaint. The motion may be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint need include "only enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

All allegations of material fact are assumed to be true and construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, that does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must permit reasonable inference of more than the mere possibility of misconduct. *Id.* If the plaintiff's pleadings fall short of this standard, dismissal is appropriate.

II. **FACTUAL ALLEGATIONS ASSUMED TO BE TRUE**

The following are Plaintiff's allegations. On August 17, 2010, the Arizona Secretary of State received a complaint accusing notary public Kristin Lindner of improperly notarizing documents for Defendants when the signer was not present. (Doc. 1-1 at 11.) Plaintiff alleges on "information and belief" that Defendants became aware of the complaint and the Secretary of State's subsequent investigation "no later than September 2010." (*Id.*) Despite this knowledge, Defendants "took no steps to remove or take any other action with respect to Ms. Lindner what [sic] would prevent her from the

performance of notarial services on their behalf." (*Id.*) In a report dated December 6, 2010, the Secretary of State determined, among other things, that Lindner had "failed to record requisite journal information," "failed to properly perform the acknowledgment" on the complainant's document, "failed to state her commission-expiration date in the notarial certificate," and "executed a statement known to be false," all in violation of Arizona notary law. (*Id.* at 23-24.) The Secretary of State therefore revoked Lindner's commission, effective December 6, 2010. (*Id.* at 23.)

Plaintiff alleges, again on "information and belief," that for three months after learning of the revocation, Defendants permitted Lindner to continue notarizing documents on their behalf, including assignments of deeds of trust, substitutions of trustee, notices of default, and notices of trustee's sale. (*Id.* at 12.) Defendants recorded these post-revocation documents in county recorders' offices across Arizona, California, Nevada, Idaho, and Oregon and used them to institute trustee's sales against hundreds of properties. (*Id.*) Defendants have so far "made no attempt to reconstitute, re-do, or re-notarize the invalid documentation properly, nor have they made any attempt to advise any purported current owners of the properties or the Deeds of Trust purportedly encumbering those properties that there is or may be an issue with the title they believe they have." (*Id.* at 13.)

On December 16, 2010, ten days after her commission had been revoked, Lindner notarized an assignment of deed of trust, a substitution of trustee, and a notice of trustee's sale on Plaintiff's property. (*Id.*) These three documents were recorded in the Maricopa County recorder's office, the last initiating a trustee's sale of the property to satisfy the defaulted note secured by the deed of trust. (*Id.*; *see* Doc. 16-1 at 3, 7, 10.)[1]

Plaintiff filed this action in Maricopa County Superior Court on December 8, 2014. (Doc. 1 at 2.) His Amended Class Action Complaint, submitted on January 27,

---

[1] Doc. 16-1 contains copies of these documents, as recorded. The complaint relies on these documents and their authenticity is not disputed. Therefore they may be considered in ruling on Defendants' 12(b)(6) motion. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

- 3 -

2015, requests certification of a class comprising "[a]ll property owners or beneficial title holders whose properties were the subject of recordations by Defendants . . . in the Office of the County Recorder wherever situated during the applicable statutory limitations period that were notarized in the State of Arizona by employees of Defendants at a time when their Notary Licenses had been revoked or suspended." (Doc. 1-1 at 14, 18.)

The Complaint's single cause of action is under A.R.S. § 33-420(A), which penalizes persons claiming an interest or lien in real property for knowingly recording a document that is "forged, groundless, contains a material misstatement or false claim or is otherwise invalid":

> A.   A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that *the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid* is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

(Emphasis added.) The broader statutory section, A.R.S. § 33-420, is entitled "False documents; liability; special action; damages; violation; classification." It contains four other subsections. Subsection B authorizes a special action to clear title, in addition to an action for damages:

> B.   The owner or beneficial title holder of the real property may bring an action pursuant to this section in the superior court in the county in which the real property is located for such relief as is required to immediately clear title to the real property as provided for in the rules of procedure for special actions. This special action may be brought based on the ground that the lien is forged, groundless, contains a material misstatement or false claim or is otherwise invalid. The owner or beneficial title holder may bring a separate special action to clear title to the real property or join such action with an action for damages as described in this section. In either case, the owner or beneficial title holder may recover reasonable attorney fees and costs of the action if he prevails.

Subsection C further penalizes a person named in a document described in subsection A if the person fails to timely correct the document upon request:

> C. A person who is named in a document which purports to create an interest in, or a lien or encumbrance against, real property and who knows that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid shall be liable to the owner or title holder for the sum of not less than one thousand dollars, or for treble actual damages, whichever is greater, and reasonable attorney fees and costs as provided in this section, if he willfully refuses to release or correct such document of record within twenty days from the date of a written request from the owner of beneficial title holder of the real property.

Subsection D creates a presumption that documents containing unauthorized property interests or liens are groundless and invalid:

> D. A document purporting to create an interest in, or a lien or encumbrance against, real property not authorized by statute, judgment or other specific legal authority is presumed to be groundless and invalid.

Subsection E renders a person in violation of subsection A guilty of a class 1 misdemeanor:

> E. A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is guilty of a class 1 misdemeanor.

Plaintiff alleges that revocation of the notary's commission rendered the three documents relating to the trustee's sale of his property and hundreds or thousands of other documents "forged, groundless, or otherwise invalid," triggering the $5,000.00 per document penalty of § 33-420(A) because Defendants knew the commission had been revoked. (Doc. 1-1 at 17.) (Trustee's sales typically involve recordation of three acknowledged documents, as in Plaintiff's case.) He further alleges that Defendants violated the statute by "failing to correct and retract documents they recorded that they knew or should have known had been recorded in violation of the statute," though he does not allege that he asked them to do so. (*Id.*)

Plaintiff does not claim that these documents or transactions were substantively invalid. Nor does he claim that the signatures on these documents were inauthentic or unauthorized or that the notary did not in fact witness the signatures. He claims only that

- 5 -

the certificates of acknowledgment accompanying these documents were signed by a notary whose commission had been revoked.  (*See* Doc. 16-1 at 3, 7, 10.)

On February 27, 2015, Defendants removed the action to this court under the Class Action Fairness Act.  (Doc. 1 at 7.)  There are no questions of federal law.  No class has yet been certified.

### III.   A.R.S. § 33-420 REQUIRES MATERIALITY FOR A PENALTY.

It is undisputed that the defect in the certificates of acknowledgment of the trustee's sale documents is immaterial to Plaintiff.  Defendants say that is fatal to the claim; Plaintiff says otherwise.  The Court first addresses this central issue.[2]

#### A.   Textual Analysis

Again, a penalty may arise under A.R.S. § 33-420(A) only if the recorded document is flawed in one of the following ways: it is "forged, groundless, contains a material misstatement or false claim or is otherwise invalid."

---

[2] Neither party briefed the threshold question whether A.R.S. § 33-420 applies at all to latent defects in certificates of acknowledgment asserted only after the trustee's sale.  The statute combats a serious problem: recordation of false property claims.  Its title is aimed at "False documents."  It punishes violations with severe monetary liability and misdemeanor criminal liability. A.R.S. § 33-420(A), (C), (E).  This statute is a poor fit for Plaintiff's facts.

The trustee's sale documents here are not "false," as Plaintiff does not contest their terms or legal effect.  They are not "forged," as Plaintiff does not claim any signatures are inauthentic.  And they do not seem "groundless" or otherwise "invalid," as Plaintiff does not dispute any underlying property claims.  *See* A.R.S. § 33-420(D) (documents with unauthorized property claims are presumed "groundless" and "invalid"); *cf. Whitman v. Am. Trucking Assocs.*, 531 U.S. 457, 466 (2001) ("Words that can have more than one meaning are given content . . . by their surroundings . . . .").

Another remedy for Plaintiff's challenge already exists in the statutory scheme.  A.R.S. § 33-513 ("When an acknowledgment is properly made, but defectively certified, any party interested may bring an action in the superior court to obtain a judgment correcting the certificate.").  Thus, it is a fair question whether § 33-420 applies at all to these latent defects in certificates of acknowledgment.  But because other grounds are dispositive, the Court does not decide this question.

Plaintiff reads the statutory text as allowing a penalty for *immaterial* flaws in a recorded document—that is, flaws that do not affect him. He notes that the statute lists various flaws disjunctively and that the word "material" only appears next to the words "misstatement or false claim," not the words "forged," "groundless," or "otherwise invalid." Plaintiff infers that materiality is not a necessary element of § 33-420(A) claims that a document is "forged," "groundless," or "otherwise invalid."

Plaintiff's reading defies ordinary principles of statutory interpretation and common sense. The words "forged," "groundless," and "invalid" each imply a sense of materiality. One does not "forge" a document to no effect. A document cannot be "groundless" or "invalid" without reference to a meaningful external standard of "ground" or "validity." The reason the word "material" does not appear next to each of these words is that such drafting would be unnecessary and awkward. In contrast, the words "misstatement" and "false claim" do not imply a sense of materiality. Both words refer to innumerable communications within a document that the legislature would have no reason to punish, such as a "false claim" that the third page of a document is page two. For those words, "material" is a useful qualifier.

Context underscores the need for materiality here. This is a punitive and criminal statute. Subsection A imposes a penalty of $5,000 or treble actual damages for each illegal document. Subsection C imposes an additional penalty of $1,000 or treble actual damages for willful failure to correct such documents upon request. Perhaps most gravely, subsection E classifies a violation of subsection A as a class 1 misdemeanor. These subsections "must be interpreted consistently" to the extent they use identical language. *Wyatt v. Wehmueller*, 167 Ariz. 281, 285, 806 P.2d 870, 874 (1991). Thus, Plaintiff's interpretation would make the recording of a document with inconsequential flaws not only unlawful and expensive, but criminal.

More generally, the purpose of A.R.S. § 33-420 is to "protect property owners from actions clouding title to their property." *Wyatt*, 167 Ariz. at 286, 806 P.2d at 875. But an immaterial flaw in a property document, by definition, would not cloud Plaintiff's

1 title.  "Statutes must be given a sensible construction which accomplishes the legislative
2 intent behind them and which avoids absurd results."  *Collins v. State*, 166 Ariz. 409,
3 415, 803 P.2d 130, 136 (Ct. App. 1990).  Plaintiff's construction contorts the statute to
4 yield a harsh, purposeless result.  Materiality must be an element of penalty claims under
5 A.R.S. § 33-420(A).

### B. Case Law

7 The case authority does not read materiality out of the statute.  Plaintiff relies
8 principally on *In re Mortgage Electronic Registration Systems, Inc.*, 754 F.3d 772 (9th
9 Cir. 2014), an action for penalties under § 33-420(A) for documents relating to a trustee's
10 sale that were "notarized in blank and 'robosigned' with forged signatures."  *Id.* at 782.
11 The court did not discuss whether materiality is necessary for liability for invalid
12 recordations.  Neither did the district court.  Materiality was obvious.

13 Plaintiff also cites two Arizona cases that discussed § 33-420(A) without
14 discussing materiality and infers from this silence that materiality is not required under
15 the statute.  *Delmastro & Eells v. Taco Bell Corp.*, 228 Ariz. 134, 263 P.3d 683 (Ct. App.
16 2011); *SWC Baseline & Crismon Inv'rs, LLC v. Augusta Ranch Ltd. P'ship*, 228 Ariz.
17 271, 265 P.3d 1070 (Ct. App. 2011).  But the more reasonable inference is simply that
18 neither court needed to discuss materiality.

19 The most relevant case is *Sitton v. Deutsche Bank National Trust Co.*, 233 Ariz.
20 215, 311 P.3d 237 (Ct. App. 2013).  There, like here, the plaintiff brought an action under
21 § 33-420 based on recorded documents relating to the trustee's sale of her home.  *Id.* at
22 216 ¶ 2, 311 P.3d at 238.  She alleged, among other things, that assignments of a note and
23 deed of trust contained misstatements and other defects.  *Id.* at 217 ¶¶ 6-8, 311 P.3d at
24 239.  The court agreed that the assignments misrepresented certain dates and the
25 assignor's identity and that these misrepresentations "could be material" to certain future
26 assignees.  *Id.* at 221 ¶ 32, 311 P.3d at 243.  But these misrepresentations were
27 immaterial to *the plaintiff* because, as explained below, they "could have had no effect on
28 [her] choice of actions."  *Id.*  Because the plaintiff "could not show that the assignments

- 8 -

1 contained a *material* misstatement or false claim, she could not prevail on her
2 § 33-420(A) claims." *Id.* at 222 ¶ 34, 311 P.3d at 244 (emphasis in original).

3 Plaintiff contends *Sitton*'s emphasis on materiality applies only to the "material misstatement or false claim" prong of § 33-420(A), not the "forged," "groundless," or "otherwise invalid" prongs. But the opinion itself is not expressly limited to any statutory prong. In fact, part of the opinion characterized the plaintiff as attacking the original lender's "authority to make *valid* assignments." *Id.* at 220 ¶ 27, 311 P.3d at 242 (emphasis added). And the opinion includes broad statements that seem applicable to the entire statute. *See, e.g.*, *id.* at 216 ¶ 2, 311 P.3d at 238 ("We affirm because . . . A.R.S. § 33-420(A) does not support relief in favor of a person who could not have been harmed by a recorded misrepresentation."). *Sitton* thus suggests that materiality is a required element of any § 33–420(A) claim. Nothing in *Sitton* suggests that materiality is not a requirement.

### C. The Acknowledgment Defect Was Not Material to Plaintiff

Again, it is undisputed that the acknowledgment defect in the documents relating to the trustee's sale of Plaintiff's property was not material to Plaintiff. Nevertheless, it merits explanation why.

A misrepresentation in a recorded document is "material" if "a reasonable person would attach importance to its existence or nonexistence in determining [his or her] choice of action in the transaction in question." *Sitton*, 233 Ariz. at 221 ¶ 31, 311 P.3d at 243 (quoting *Caruthers v. Underhill*, 230 Ariz. 513, 521 ¶ 28, 287 P.3d 807, 815 (Ct. App. 2012)).

In *Sitton* the misrepresentations in the recorded assignments of the note and deed of trust were not material to the plaintiff because they could not have affected the plaintiff's choice of action in the transaction in question. The plaintiff was liable on the note, and at the time of closing her "choices were to repay the money pursuant to the terms of the note, renegotiate the terms of the note, or default and cause foreclosure." *Id.* at 222 ¶ 33, 311 P.3d at 244. The misrepresentations in the recorded assignments did not

affect these choices because the plaintiff's "liability on the note remained the same no matter who was assigned as beneficiary, or when." *Id.* The misrepresentations about the timing and sequence of the assignments were immaterial to the plaintiff as the owner/trustor. *Id.* at 221-22 ¶¶ 32-33, 311 P.3d at 243-44.

The same is true here. The acknowledgment defect in the property documents could not have affected Plaintiff's choice of action as the owner/trustor. The purpose of the acknowledgment here was to effect constructive notice to later buyers or encumbrancers. A deed of trust recorded under the Deed of Trust Act "provides constructive notice of the deed's contents to 'all persons,' including subsequent purchasers." *Manicom v. CitiMortgage, Inc.*, 236 Ariz. 153, 156 ¶ 8, 336 P.3d 1274, 1277 (Ct. App. 2014) (quoting A.R.S. § 33-818). But such constructive notice is effective only if the deed of trust or other document is properly acknowledged and notarized:

> Except as otherwise provided in this section, a trust deed, substitution of trustee, notice of resignation of trustee, assignment of a beneficial interest under a trust deed, notice of sale, cancellation of notice of sale, trustee's deed, deed of release, and any instrument by which a trust deed is subordinated or waived as to priority, *if acknowledged as provided by law*, shall from the time of being recorded impart notice of the content to all persons, including subsequent purchasers and encumbrancers for value.

A.R.S. § 33-818 (emphasis added); *see also W. W. Planning, Inc. v. Clark*, 10 Ariz. App. 86, 88, 456 P.2d 406, 408 (1969) ("Before an instrument will be deemed to be lawfully recorded and to impart constructive notice it must have been acknowledged."). Accordingly, defective acknowledgment does not invalidate the documents as such; at most it defeats constructive notice.[3]

---

[3] It is not clear there was a failure of constructive notice here. That the documents were acknowledged before a notary whose commission had expired is at most a latent defect, as anyone searching county records would have thought the documents were properly acknowledged and notarized. *See In re Wonderfair Stores, Inc. of Arizona*, 511 F.2d 1206, 1214 (9th Cir. 1975) (holding, under Arizona law, that even if certain pages of a recorded lease were not properly acknowledged or notarized, lease gave constructive notice because defect was "technical" and "not apparent from the instrument"); *accord In re Bisbee*, 157 Ariz. 31, 35, 754 P.2d 1135, 1139 (1988) (citing *In re Wonderfair* with

1 Here any failure of constructive notice could not harm Plaintiff. He could lose no right or interest. It would not reduce the number of bidders who appear at the trustee's sale because only people with actual notice do that. Indeed, in usual commercial circumstances it is hard to imagine practical harm to anybody from lack of constructive notice of a pending trustee's sale. Admittedly, if an intervening buyer had no actual or constructive notice of the pending trustee's sale, that buyer might prevail over a later buyer at the trustee's sale. *See Phipps v. CW Leasing, Inc.,* 186 Ariz. 397, 401, 923 P.2d 863, 867 (Ct. App. 1996). But that circumstance is improbable. An intervening buyer without notice of the pending sale would still have constructive notice of the previously recorded deed of trust. That buyer could not get clear title without paying off the note, which would cause the beneficiary to cancel the trustee's sale altogether.

Even if one can imagine circumstances in which someone else would be harmed, all that matters here is that failure of constructive notice could not harm Plaintiff as the owner/trustor. Even "an unrecorded instrument is fully enforceable between the parties to the transaction," since "recording acts are intended to protect a later purchaser's reliance on a seller's title and to provide a means of resolving competing title claims, not to invalidate a transfer between the parties to the deeds of trust." *3502 Lending, LLC v. CTC Real Estate Serv.*, 224 Ariz. 274, 277, 229 P.3d 1016, 1019 (Ct. App. 2010). The documents relating to the trustee's sale of Plaintiff's house were substantively valid. Plaintiff does not claim title to the house or seek to unwind the sale. Rather, he seeks a windfall based on an immaterial acknowledgment defect. In the words of *Sitton,* the acknowledgment defect could not have affected Plaintiff's choice of action in the transaction in question. Therefore, it was immaterial to him as a matter of law and his claim under A.R.S. § 44-420(A) fails.

---

approval). This is not a case where acknowledgment was wholly lacking or flawed in a recognizable way. *E.g.*, *Phipps v. CW Leasing, Inc.*, 186 Ariz. 397, 399, 923 P.2d 863, 865 (Ct. App. 1996) (recorded document wholly lacked certificate of acknowledgment and so gave no constructive notice). The parties have not briefed this question.

### IV. BY OPERATION OF LAW THE ACKNOWLEDGMENTS ARE FULLY VALID.

Even apart from the immateriality to Plaintiff of the acknowledgment defect, two statutes validate the acknowledgments in any event. Under the governing recording statutes and the Deed of Trust Act, the acknowledgments were fully validated after having been recorded for one year and when the property passed to a purchaser for value and without notice. Both those times have long passed. The acknowledgments have been doubly redeemed. The Court need not decide what penalties Plaintiff would have if he had filed an action before then.

### A. The Recording Statutes

Under A.R.S. § 33-411, a document affecting real property must be properly recorded in order to give constructive notice to subsequent purchasers:

> A. No instrument affecting real property gives notice of its contents to subsequent purchasers or encumbrance holders for valuable consideration without notice, unless recorded as provided by law in the office of the county recorder of the county in which the property is located.

A.R.S. § 33-411(A). Proper recordation, in turn, generally requires a proper certificate of acknowledgment:

> B. An instrument shall not be deemed lawfully recorded unless it has been previously acknowledged in the manner prescribed in this chapter except in the case of master mortgages as provided in § 33-415.

A.R.S. § 33-411(B). However, any "defect, omission or informality in the certificate of acknowledgment" is cured when the document has been recorded for longer than one year:

> C. For purposes of this section, an instrument affecting real property containing *any defect, omission or informality in the certificate of acknowledgment* and which has been *recorded for longer than one year* in the office of the county recorder of the county in which the property is located *shall be deemed to have been lawfully recorded on and after the date of its recording*.

A.R.S. § 33-411(C) (emphasis added).

1    Plaintiff's challenge here is for a "defect, omission or informality in the certificate
2 of acknowledgment" in the recorded documents.  But this action was filed nearly four
3 years after the recordings.  Therefore, even if the defective acknowledgments invalidated
4 the documents when originally recorded, in whole or in part, such invalidation has been
5 cured back to the date of the recording by the passage of a year.  A.R.S. § 33-411(C).

6    Plaintiff argues § 33-411(C) does not apply here because it is explicitly limited
7 "[f]or purposes of this section."  But "this section" includes subsection B's requirement
8 that an instrument be properly "acknowledged" in order to be lawfully recorded.  Thus,
9 the one-year cure of "any defect, omission or informality in the certificate of
10 acknowledgment" reaches the documents Plaintiff claims were improperly recorded.  The
11 very title of § 33-411—"acknowledgment required for proper recording"—supports this.

12    After one year, therefore, § 33-411(C) cures an acknowledgment defect as though
13 the document was "lawfully recorded on and after the date of its recording."  The broad
14 purpose is to prevent belated objections based on mere defects in acknowledgments in
15 documents that are regular on their face.  That purpose of saving honest transactions
16 cannot have the perverse effect of retroactively imposing constructive notice to a time
17 when there was none and invalidating transactions that were valid when made.  *Phipps v.*
18 *CW Leasing, Inc.,* 186 Ariz. 397, 401, 923 P.2d 863, 867 (Ct. App. 1996) (document
19 recorded without acknowledgment "deemed to have been lawfully recorded on and after
20 the date of its recording as to anyone purchasing after the year's period, but not as to
21 someone who purchased during that period").

22    In *Phipps* a right of first refusal was not acknowledged at all and was unrecorded
23 for several years.  *Id.* at 399, 923 P.2d at 865.  A few months after it was recorded, the
24 owner sold to a different person without knowledge of the right of first refusal.  *Id.*  The
25 buyer prevailed over the holder of the unacknowledged right of first refusal because the
26 court concluded there was no constructive notice at the time he bought.  *Id.* at 402, 923
27 P.2d at 868.  Thus, the court excluded retroactive constructive notice from the retroactive
28 cure of defective acknowledgment, to avoid substantive injustice that would defeat, not

serve, the purpose of § 33-411(C). The court's opinion does not limit the statute's otherwise broad instruction to deem defective documents "lawfully recorded on and after the date of its recording." Nor does the opinion govern the facts of this case. *Phipps* dealt with the complete absence of any acknowledgment in a recorded document, not the revocation of a notary's commission in an acknowledgment otherwise valid on its face. The court itself noted that a total absence of acknowledgment "may not even fall within the language of A.R.S. section 33-411(C)," which addresses only a "defect, omission or informality in the certificate of acknowledgment." *Id.* at 402 n.1, 923 P.2d at 868 n.1.

Seizing on that distinction, Plaintiff argues § 33-411(C) does not apply here because the revocation of the commission is more than just a "defect, omission or informality" in the acknowledgment but rather a complete absence of acknowledgment. This is unpersuasive because the acknowledgment was regular on its face. The defect was exactly the kind that cannot be recognized and that people cannot be expected to ferret out by checking the licensing status of every notary with whom they deal and whose seal is facially valid.

The case Plaintiff relies on is of little help. In *Zrihan v. Wells Fargo Bank, N.A.*, No. CV-12-02073-PHX-DGC, 2014 WL 348197 (D. Ariz. Jan. 31, 2014), the evidence on summary judgment clashed on whether the principal's signature itself was true or forged. *Id.* at *4. There was no evidence on whether the notary was licensed or not at the time, but the notary's purported seal listed the expiration date of her commission beyond what the statutes allowed. *See id.* *Zrihan* reached no legal conclusion and denied summary judgment.

Plaintiff also argues A.R.S. § 12-550 provides a four-year statute of limitations for his penalty claim. This is true. *Sitton v. Deutsche Bank Nat'l Tr. Co.*, 233 Ariz. 215, 219, 311 P.3d 237, 241 (Ct. App. 2013). But § 33-411(C) is not a statute of limitations. Rather, it deems a document with a defective certificate of acknowledgment "to have been lawfully recorded on and after the date of its recording." This operates differently

1 from a statute of limitations: here the claims, if any, are erased.  If there was a claim in the beginning, now there is not and never was one.

This interpretation of § 33-411(C) is consistent with Arizona and federal cases holding that minor technical defects in a notarization or the underlying property document do not defeat an otherwise proper recording under Arizona law.  *See Watson Constr. Co. v. Amfac Mortg. Corp.*, 124 Ariz. 570, 575-76, 606 P.2d 421, 426-27 (1979) (recorded deed of trust gave constructive notice despite missing caption and two pages); *In re Bisbee*, 157 Ariz. 31, 35, 754 P.2d 1135, 1139 (1988) (recorded deed of trust gave constructive notice despite failing to name trustee); *In re Wonderfair Stores, Inc. of Arizona*, 511 F.2d 1206, 1214 (9th Cir. 1975) (recorded lease gave constructive notice under Arizona law despite improper acknowledgment); *AA Am. Dev. Corp. v. United States*, No. CIV06-2450-PHX-SMM, 2007 WL 2330869, at *5 (D. Ariz. Aug. 14, 2007) (notice of lis pendens recorded for more than one year but lacking acknowledgment gave constructive notice under Arizona law); *Robertson v. DLJ Mortg. Capital, Inc.*, No. CV-12-8033-PCT-LOA, 2012 WL 4840033, at *11 (D. Ariz. Oct. 11, 2012), *aff'd* (Mar. 29, 2013) (rejecting "technical arguments" under Arizona law against documents recorded for more than one year).

### B.     The Deed of Trust Act

The Deed of Trust Act itself independently cured the defect in the acknowledgment years before Plaintiff brought this action.  The original Deed of Trust Act addressed procedural defects in trustee's sales and documents, "including recording":

> The trustee's deed shall raise the presumption of compliance with the requirements of the deed of trust and this chapter relating to the exercise of the power of sale and the sale of the trust property, *including recording*, mailing, publishing and post of notice of sale and the conduct of sale.  *A trustee's deed shall constitute conclusive evidence of the meeting of those requirements in favor of purchasers or encumbrancers for value and without actual notice*.

A.R.S. § 33-811(B) (emphasis added).  Plaintiff alleges that he and the class members lost their homes by foreclosure or forced sales.  Unless the buyers knew of the revocation

of the notary's commission, they were purchasers "for value without notice." Plaintiff does not allege that any buyers did know. In fact, at oral argument he conceded he has no basis to allege that the third party who purchased his home was anyone other than a purchaser for value and without actual notice. Thus, this statute independently renders Plaintiff's claims non-existent by legislating that all such compliance is deemed to have occurred (regardless of the historical facts). This extinguishes Plaintiff's penalty claims under A.R.S. § 33-420(A).

This extinguishment of claims by A.R.S. § 33-811(B) is different from the § 33-811(C) waiver of "all defenses and objections to the sale" not raised before sale:

> The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33-809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. mountain standard time on the last business day before the scheduled date of the sale.

A.R.S. § 33-811(C). This subsection protects the buyer's title from cloud by cutting off the trustor's defenses and objections to the sale. A § 33-420(A) penalty is not a defense or objection to the sale and so is not cut off by subsection 811(C):

> [F]ailure to enjoin a trustee's sale does not waive claims for monetary awards under § 33-420(A). Section 33-811(C) contemplates the waiver of "defenses and objections to the sale" only, and nothing in § 33-420(A) provides a defense to a sale or makes recovery contingent upon a sale.

*Sitton,* 233 Ariz. at 218 ¶ 13, 311 P.3d at 240.

But § 33-811(B) does what § 33-811(C) does not: it legislates that the procedural requirement at issue, recording, was met. The premise for a § 33-420(A) penalty is expunged *ab initio.* Subsection 811(B) legislates for the past as well as the future. That must mean the then-unasserted § 33-420(A) penalty cannot be asserted after the sale because it does not exist.

The Court need not address the legal effect of a plaintiff bringing this kind of § 33-420(A) penalty claim before the sale concluded. The Plaintiff here did not. If he

had, the beneficiary would have cancelled the sale and re-noticed it. The noticed sale would never have been completed.

## V. PLAINTIFF HAS ADEQUATELY PLED KNOWLEDGE.

Plaintiff alleges "on information and belief" that Defendants knew the notary's commission had been revoked. Defendants argue this allegation is insufficient.

"Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible, even after the *Twombly* and *Iqbal* decisions." 5 Charles Alan Wright et al., *Federal Practice & Procedure* § 1224 (3d ed., Apr. 2015 update) (collecting cases). "Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject." *Id.* The Ninth Circuit has adopted this approach after *Twombly* and *Iqbal* in at least one context. *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F.3d 1082, 1088 (9th Cir. 2014) (holding that "when information regarding a defendant that is necessary to establish diversity of citizenship is not reasonably available to a plaintiff, the plaintiff should be permitted to plead jurisdictional allegations as to those defendants on information and belief and without affirmatively asserting specific details regarding the citizenship of those defendants").

"Some cases suggest that when allegations are made on the basis of information and belief, the facts on which the pleader's belief is founded should also be alleged." 5 Wright et al., *Federal Practice & Procedure* § 1224, *supra*. That requirement may be appropriate, depending on the circumstances. In *Menard v. CSX Transportation, Inc.*, for example, the plaintiff alleged "upon information and belief" that a company's employees "knew" he was injured and "had sufficient time to take action to prevent further injury to him." 698 F.3d 40, 44 (1st Cir. 2012). The First Circuit noted that the complaint provided no facts indicating that the plaintiff was seen by the company's employees or

1 that he could have been rescued.  *Id.*  The court stated: "[I]f he had any facts to support this assertion, they should have been set forth.  'Information and belief' does not mean pure speculation."  *Id.*  Ultimately, however, the First Circuit vacated the district court's dismissal of the complaint and remanded to give the plaintiff an opportunity to say more if he could.  *Id.* at 45-46.

Here, it is unlikely that the Defendant corporations knew on December 16 of revocation of the notary's commission on December 6.  The most forceful inference from these circumstances is that the notary kept her revocation secret to keep her job as long as possible.  It is difficult to believe highly regulated businesses would knowingly let a revoked notary keep doing their notarizations.  There would be no benefit, even illicit benefit, for them to do that.

Nevertheless, whether Defendants in fact knew or had reason to know that the notary's commission had been revoked may not be a matter within Plaintiff's knowledge.  Therefore Plaintiff's allegation survives the minimal pleading standard.

In reaching this conclusion, the Court does not accept Plaintiff's theory that the notary's own knowledge of her revocation may be "imputed" to Defendants under agency law principles.  The Arizona Supreme Court expressly foreclosed this sort of theory with respect to the knowledge requirement under A.R.S. § 33-420(A).  *Wyatt v. Wehmueller*, 167 Ariz. 281, 285, 806 P.2d 870, 874 (1991).

## VI.   LEAVE TO AMEND WOULD BE FUTILE.

Leave to amend should be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  In deciding whether to grant leave to amend, courts consider bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the party has previously amended his pleadings.  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  Futility of amendment can, by itself, justify the denial of leave to amend.  *Id.*

Here, Plaintiff's claim fails as a matter of law for the reasons explained above and cannot be cured by amended pleadings. Therefore, this action must be dismissed without leave to amend.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint (Doc. 16) is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment dismissing this action with prejudice for failure to state a claim upon which relief can be granted.

The Clerk shall terminate this case.

Dated this 31st day of March, 2016.

Neil V. Wake
United States District Judge