Quarles & Brady LLP
Firm State Bar No. 00443100
Lauren Elliott Stine (#025083)
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
TELEPHONE 602.229.5200
lauren.stine@quarles.com

MAYER BROWN LLP
(Admitted Pro Hac Vice)
Lucia Nale (Ill. Bar No. 6201684)
Thomas V. Panoff (Ill. Bar No. 6283695)
Christopher S. Comstock (Ill. Bar No. 6299333)
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
Facsimile (312) 701-7711
lnale@mayerbrown.com
tpanoff@mayerbrown.com
ccomstock@mayerbrown.com

*Attorneys for Defendants CitiMortgage, Inc. And CR Title Services, Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David A. Kester, on behalf of himself and all others similarly situated,<br><br>             Plaintiff,<br><br>v.<br><br>CitiMortgage, Inc.; CR Title Services, Inc.; and Does 1 to 25, inclusive,<br><br>             Defendants. | Case No. 2:15-cv-00365-DLR<br><br>(Formerly Maricopa County Superior Court CV2014-014330)<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>(Assigned to Hon. Douglas L. Rayes)<br><br>**(Oral Argument Requested)** |

## I. INTRODUCTION

Defendants' Motion for Summary Judgment ("MSJ") [Dkt. # 103] presents a simple, undisputed reason why summary judgment is warranted: Defendants did not know or have reason to know, on December 17, 2010, that the Arizona Secretary of State had decided, eleven days earlier, to revoke Kristen Lindner's notary commission. Although Plaintiff now tries to distort this reality with a series of irrelevant and speculative arguments, Plaintiff cannot overcome this fundamental, and dispositive, defect in his case. The Court therefore should grant summary judgment in favor of Defendants.

Plaintiff filed this lawsuit under the mistaken belief that either Defendants or Lindner had received the Secretary of State's December 6, 2010 revocation letter prior to recording the two documents at issue eleven days later. *See* Second Amended Complaint ("SAC") [Dkt. # 58] ¶¶ 13-17. However, the undisputed discovery record confirmed that neither Defendants nor Lindner received the letter, as Plaintiff now concedes. Plaintiff's Counterstatement of Material Facts ("CSOF") [Dkt. # 123], p. 7, ¶¶ 22-23.[1] Accordingly, there is no dispute that Defendants lacked actual knowledge of the revocation.

After recognizing that there was no actual knowledge, Plaintiff pivoted his case to whether Defendants had "reason to know." But this theory of liability also fails. Plaintiff admits that "reason to know" in A.R.S. § 33-420(A) requires that "the actor has information" from which a reasonable person "would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist." *Coventry Homes, Inc. v. Scottscom P'ship*, 155 Ariz. 215, 219 (1987); *see also* Opposition [Dkt. # 122] ("Opp.") at 9. Here, the "fact in question" is that the Secretary of State decided to revoke Lindner's

---

[1] Plaintiff's Counterstatement is over 22 pages, far in excess of the 10-page limit in this Court's Scheduling Order (at ¶ 8(c)). To the extent the Court does not strike Plaintiff's Counterstatement, it should disregard the pages that exceed the 10-page limit.

commission. However, on December 17, 2010 (*i.e.*, the recording date for the two documents), it is undisputed that Defendants did not **actually possess** information from which they could have inferred or assumed that Lindner's commission had been revoked.

Perhaps recognizing this key defect too, Plaintiff now attempts to shift the statutory burden and argues that Defendants should have taken additional steps to learn of the alleged revocation between December 6, 2010 and December 17, 2010, including independently validating Lindner's commission with the Secretary of State on a weekly basis. But this is irrelevant under A.R.S. § 33-420(A). As Plaintiff admits, the proper inquiry is on the information Defendants actually possessed, rather than hypothetical information that they could have acquired. It is undisputed that Defendants did not validate the status of Lindner's commission in the eleven-day period and therefore did not actually possess any information that would have put them on notice of the revocation. Moreover, as shown below, there was no reason—much less requirement—to do so, and even if they had, there is no evidence that Defendants would have been able to validate Lindner's commission. For this reason alone, the Court should grant summary judgment.

In addition, there is no support for Plaintiff's misguided argument that Defendants were obligated to attempt to validate the status of Lindner's commission in the eleven-day period rather than wait to be informed by state officials about the results of the investigation. Plaintiff relies solely on the opinion of his retained expert, Christopher Wyatt, to argue that Defendants should have: (1) suspended Lindner from notarizing documents when they learned a complaint had been filed against her; and (2) validated the status of her commission on a weekly basis. Plaintiff argues that Wyatt is qualified to offer these opinions based on his "experience in the banking and mortgage servicing industry." However, as shown in the MSJ (at 11-12), there is no requirement to suspend a notary merely because a complaint has been filed. Wyatt conceded at his deposition that he is not aware of **any** bank or mortgage servicer following his advice by either

suspending a notary after the filing of a complaint or validating a notary's commission on a weekly basis. Wyatt thus has no "experience" with respect to the relevant issues. Instead, he offers only results-driven speculation, which the Court should disregard.

As shown below, there is no dispute as to the relevant facts. And Plaintiff's attempt to manufacture a "battle of the experts" fails because his expert has no basis or support for his opinions. The Court should thus grant summary judgment for Defendants.

**II.   ARGUMENT**

Defendants' MSJ established (at 8-17) that Plaintiff's claim under A.R.S. § 33-420(A)—the only claim in this case—fails as a matter of law because Defendants did not know or have reason to know, on December 17, 2010, that the Arizona Secretary of State had decided on December 6, 2010 to revoke Lindner's commission. Plaintiff's Opposition confirms that there is no factual dispute regarding Defendants' knowledge. The parties also agree about the information in Defendants' possession as of December 17, 2010, including the fact that neither Defendants nor Lindner received a copy of the December 6, 2010 letter from the Arizona Secretary of State. Therefore, there is no factual dispute that would preclude the entry of summary judgment.

Given that the material facts are undisputed, Plaintiff instead turns to pure speculation. Specifically, Plaintiff argues (at 8-11) that Defendants should have suspended Lindner from notarizing documents and independently validated the status of her commission on a weekly basis. Not only is that not the correct inquiry, but Plaintiff's only support for these misguided arguments is his expert's subjective speculation. As shown below, the Court should disregard such unsupported testimony.

Because there are no factual disputes about Defendants' knowledge, the Court should grant summary judgment. It is well-established that summary judgment is appropriate with respect to issues involving a party's knowledge when the facts are undisputed and no contradictory inferences can be drawn. *See, e.g.*, *F.T.C. v. Network*

*Servs. Depot, Inc.*, 617 F.3d 1127, 1139 (9th Cir. 2010); *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).  Plaintiff argues (at 16-17) that *Network Servs.* is distinguishable because the "reason to know" standard allegedly was not at issue. However, in both *Network Servs.* and *Braxton-Secret*, the Ninth Circuit specifically held that summary judgment is appropriate as to the issue of whether a party "knew or **should have known** of a particular condition."  *Network Servs.*, 617 F.3d at 1139 (emphasis added).  And the Ninth Circuit in *Braxton-Secret* affirmed summary judgment based on a determination of whether the plaintiff "should have known" a particular fact.  769 F.2d at 531.  Thus, where the material facts are undisputed, as they are here, summary judgment is appropriate both under the "actual knowledge" and the "should have known" standard.[2]

A. **Defendants did not know on December 17, 2010 that Lindner's notary commission allegedly had been revoked eleven days earlier.**

In the MSJ, Defendants demonstrated (at 9-10) that neither Defendants nor Lindner received the December 6, 2010 letter from the Arizona Secretary of State.  In his Counterstatement, Plaintiff concedes this point.  CSOF, p. 7, ¶¶ 22-23.  And Plaintiff's expert, Wyatt, testified that he also has seen no evidence that Defendants actually knew about the revocation by December 17, 2010.  *Id.* p. 9, ¶ 33.  These concessions eliminate

---

[2]  Plaintiff cites (at 7-8) a number of cases in which disputed factual issues precluded summary judgment with respect to a party's knowledge.  *See, e.g.*, *Friedman v. Live Nat. Merch., Inc.*, 833 F.3d 1180, 1186-87 (9th Cir. 2016)  (summary judgment not appropriate where an email produced in discovery arguably showed that the defendant knew there was a risk of copyright infringement); *Spencer v. Asher*, 2019 WL 125845, at *4-5 (Ariz. Ct. App. Jan. 8, 2019) (reversing summary judgment *in favor of plaintiff* on § 33-420(A) claim because, among other things, plaintiff had not established defendant's knowledge of the alleged invalidity); *Coventry Homes*, 155 Ariz. at 219 (reversing summary judgment on § 33-420(A) claim because of "substantial evidence in the record" from which the court could find that the defendant knew that its recorded lis pendens was groundless). Those cases are distinguishable because they did not involve undisputed material facts. Here, the parties agree on the information that was available to Defendants on December 17, 2010, the date the two documents were recorded.

any factual dispute regarding Defendants' actual knowledge.

Faced with this reality, Plaintiff's Opposition relies on a number of irrelevant arguments and speculative assertions. For example, Plaintiff argues (at 11-13) that Defendants should be charged with Lindner's knowledge under the doctrine of *respondeat superior*. But it is undisputed that Lindner did not receive the December 6, 2010 letter either (CSOF, p. 7, ¶¶ 22-23), so she had no knowledge that could be imputed. In any event, Judge Wake previously explained that Plaintiff's theory of imputed knowledge was "expressly foreclosed" by the Arizona Supreme Court in *Wyatt v. Wehmueller*, 167 Ariz. 281 (1991). *See* Order [Dkt. # 37], at 18. In *Wyatt*, the Arizona Supreme Court examined the nature of the statute at issue, A.R.S. § 33-420(A), and unambiguously held that "imputed knowledge is not enough for damages to be imposed under § 33-420(A)." 167 Ariz. at 285. Plaintiff cites (at 11-12) to cases that discuss *respondeat superior* in other contexts and do not involve § 33-420(A).³ In light of *Wyatt*, those cases are irrelevant.

Plaintiff also argues (at 8-9) that Defendants were "charged with knowing the laws that pertain to the documents [they] record[]," including the need for an acknowledgement on certain documents. This argument is irrelevant. There is no dispute that the documents at issue included acknowledgements. CSOF, p. 5, ¶ 11.

Plaintiff additionally argues (at 9-10) that Defendants should be charged with knowledge of Lindner's communications with the Arizona Attorney General's Office prior to December 2010. This, too, is irrelevant. None of those communications with the Attorney General's Office purported to revoke Lindner's commission. CSOF, p. 5-6,

---

³ *See, e.g.*, *U.S. v. A & P Trucking Co.*, 358 U.S. 121, 125 (1958) (stating generally that entities may be subject to *respondent superior* for certain claims brought under federal statutes); *Hanlester Network v. Shalala*, 51 F.3d 1390, 1400 (9th Cir. 1995) (finding corporate entities could be liable for actions undertaken by agent); *Apollo Fuel Oil v. U.S.*, 195 F.3d 74, 76-77 (2d Cir. 1999) (agent's knowledge can be imputed to corporate principal); *Boise Dodge, Inc. v. U.S.*, 406 F.2d 771, 772 (9th Cir. 1969) (affirming conviction of corporation for actions taken by authorized employees).


1  ¶¶ 13-19.  Nor did any of those communications require Lindner to cease notarizing
2  documents.  *Id.*  Nor did they instruct her or her employers to independently validate the
3  status of the investigation.  *Id.*  The communications did not provide any information
4  about how or where to check on the status of the investigation or how to validate the
5  status of Lindner's commission.  *Id.*  Instead of instructing Lindner or Defendants to
6  follow up regarding the investigation, a representative from the Attorney General's Office
7  told Lindner that she would "hear from the Secretary of State's Office regarding its
8  decision about the complaint" (*See* Ex. N to Defendants' Statement of Material Facts
9  ("SOF") [Dkt. # 104]), which is consistent with Arizona law allowing a notary to continue
10 work until a commission is revoked (A.R.S. § 41-312(D)).

11  Plaintiff also asserts (at 3, 10) that Lindner was told in November 2010 that the
12 investigation would be completed "soon."  Plaintiff invents this notion out of whole cloth.
13 None of Lindner's communications with the Attorney General's Office referenced any
14 timeframe in which the investigation would be completed.  *See* Exs. I, L, & N to SOF.

15  Finally, Plaintiff asserts (at 12-13) that Defendants "had copies of Ms. Lindner's
16 notary logs" and therefore "it is reasonable to infer that [Defendants] knew what the logs
17 contained."  Plaintiff appears to argue (at 12-13) that the notary logs were somehow
18 deficient under Arizona law and that Defendants therefore should have inferred that
19 Lindner's commission effectively had been revoked, despite the fact that neither Lindner
20 nor Defendants had received any actual notice of revocation.  This is nonsensical.  The
21 sufficiency of Lindner's log entries is irrelevant to the matters at issue because it has no
22 bearing on whether Defendants had notice that Lindner's commission had actually been
23 ***revoked*** or that she was no longer authorized to notarize documents.  The Secretary of
24 State has discretion to decide the appropriate outcome of an investigation, including
25 suspending the notary's commission, rather than revoking it.  A.R.S. § 41-330(C).  As
26 explained in the MSJ (at 11-12), there is no reason to believe a notary's commission

would be revoked merely because a complaint was filed and an investigation is ongoing. Under Arizona law, a notary "shall continue to serve until" the commission is revoked. A.R.S. § 41-312(D). Therefore, Defendants were not on notice that Lindner's commission had been revoked merely because they had access to her notary log.[4]

### B. Defendants did not have reason to know on December 17, 2010 that Lindner's notary commission allegedly had been revoked.

1. <u>Defendants did not have actual knowledge from which they should have inferred or assumed Lindner's commission had been revoked.</u>

As Plaintiff admits (at 9), the Arizona Supreme Court has applied the definition in the Restatement of Torts to the phrase "reason to know" in A.R.S. § 33-420(A):

> "Reason to know" means that the actor has knowledge of facts from which a reasonable man of ordinary intelligence or one of the superior intelligence of the actor would either infer the existence of the fact in question or would regard its existence as so highly probable that his conduct would be predicated upon the assumption that the fact did exist.

*Coventry Homes*, 155 Ariz. at 219 (quoting Restatement (Second) of Torts § 12(1)).

Here, Plaintiff alleges that Defendants had "reason to know" that the documents at issue were invalid when recorded because the Secretary of State had decided to revoke Lindner's commission eleven days prior. SAC ¶¶ 13-17. But the record confirms that there is no evidence supporting the idea that Defendants had any information on December 17, 2010 from which they could have "inferred" or "assumed" that Lindner's commission had been revoked. Plaintiff appears to misinterpret the applicable standard and argues that Defendants had access to information that should have prompted them to

---

[4] Plaintiff also argues in a footnote (at 12, n.5) that a signer must appear before a notary in order for a notarization to be valid. However, Plaintiff concedes that this requirement is "not specifically at issue in this case" and the SAC does not contain any allegation that the relevant signers did not appear before Lindner. Plaintiff cannot amend his SAC with new allegations raised for the first time in his Opposition. *See, e.g., Wasco Prods. Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2008).

seek out additional information. Specifically, Plaintiff argues (at 8-11) that Defendants knew that a complaint had been filed against Lindner, and therefore should have independently validated the status of her commission on a frequent basis—at least weekly—which allegedly would have caused them to learn that the commission had been revoked. *See, e.g.*, Opp. at 10 (arguing that Defendants should have independently validated the status of Lindner's commission). That is not, however, the relevant inquiry.

Instead, the proper question is whether Defendants had actual information that should have caused them to infer or assume that Lindner's commission had been ***revoked***, not whether they had information that should have caused them to independently validate Lindner's commission (which, as shown below, also is untrue). *See Coventry Homes*, 155 Ariz. at 219 ("reason to know" relates to information actually in party's possession, not hypothetical information party supposedly could have obtained). It is undisputed that Defendants did not validate the status of Lindner's commission in the relevant eleven-day period (because they assumed the investigation was still ongoing) and therefore did not actually possess any information sufficient to put them on notice of the revocation.

Even if Defendants had checked with the Secretary of State's office in the eleven-day period at issue, there is no reason to believe that Defendants would have been able to validate the status of Lindner's commission. As explained in the MSJ (at 15-16), there is no evidence that the status of Lindner's notary commission was timely updated through the Secretary of State's website or internal records between December 6, 2010 and December 17, 2010. Plaintiff argues (at 6) that the December 6, 2010 letter included a "cc" to the "notary file," but there is no evidence as to what this "file" is, when the letter arrived in the "file," or whether the status of the "file" was even available to the public, as Plaintiff's own expert conceded and confirmed. CSOF, p. 14, ¶ 44.

2. <u>There is no support for Wyatt's opinions that Defendants should have suspended Lindner or validated her commission on a weekly basis.</u>

The fact that Defendants lacked any information from which to assume or infer that Lindner's commission had been revoked is alone sufficient to resolve the inquiry under § 33-420(A) and grant summary judgment. *See Coventry Homes*, 155 Ariz. at 219. However, there also is no support for Plaintiff's speculation that Defendants were obligated to validate the status of Lindner's commission in the eleven-day period at issue. Plaintiff attempts to manufacture a "battle of the experts" by relying on Wyatt's testimony that Defendants should have: (1) suspended Lindner from notarizing documents when they learned of the complaint and (2) independently validated the status of her commission on a weekly basis. Opp. at 10. As explained in the MSJ (at 12-17), however, Wyatt's opinions are based solely on "subjective belief" and "unsupported speculation."[5]

Plaintiff argues (at 13) that Wyatt's opinions are supported by his "experience in the banking and mortgage servicing industry." However, Wyatt conceded at his deposition that he is not aware of *any* bank or mortgage servicer either suspending a notary's commission after the filing of a complaint or validating the status of a notary's commission on a more frequent basis than once per month. When asked about suspending a notary after the filing of a complaint, Wyatt testified that he is not aware of "a specific instance like in this case" and that he was not aware of any law, regulation, policy, or procedure that would require suspension. *See* Wyatt Dep. Trans. Ex V to SOF at 62:25-63:15; 72:23-73:19. When asked about validating the status of a notary's commission, Wyatt conceded that he is not aware of any servicer that validated the status of a notary's

---

[5] Plaintiff incorrectly argues (at 16) that Wyatt's opinions are supported by Defendants' policies—put into place *after* the time period in question—which required monthly validation of notary commissions, and supported by Defendants' expert, Lisa Murphy. This is flatly wrong. Both Defendants' policies and Murphy's testimony contradict Wyatt's opinions that Defendants should have suspended Lindner or validated the status of her commission at a frequency greater than once per month. SOF ¶¶ 38, 43.

commission on a basis more frequent than once per month and that the few servicers that he worked for used only a monthly verification period. *Id.* at 53:9-55:16; 72:12-22; 81:2-83:23. Thus, Wyatt has no "experience" to support his opinions. In fact, to the extent he can offer testimony based on experience, that testimony contradicts his opinions.

Under Rule 702, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how the experience is reliably applied to the facts." Rule 702, Advisory Committee Notes (2000). "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* "The touchstone is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *11333 Inc. v. Certain underwriters at Lloyd's, London*, 261 F. Supp. 3d, 1003, 1027-28 (D. Ariz. 2017). In facing a similar *Daubert* challenge, Judge Wake excluded testimony from an expert with over 21 years of industry experience because the expert's experience was thin with respect to the specific issue and his methodology was flawed. *Id.*[6]

Plaintiff cites (at 14-15) cases in which opinion testimony was allowed based on an expert's experience. In those cases, however, the expert explained how his or her experience supported the conclusions reached. *See, e.g.*, *Fortune Dynamic, Inc. v. Victoria Secret Store Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010) (expert

---

[6] *See also Haldiman v. Con. Cas. Co.*, 2014 WL 12670637, at *8-9 (D. Ariz. Aug. 26, 2014) (excluding testimony where expert's opinions were not supported by his experience); *Suenos, LLC v. Goldman*, 2013 WL 11312587, at *2 (D. Ariz. Jan. 24, 2013) (excluding testimony where expert "makes no effort show how his experience leads to the conclusions he reaches or how he applies his experience to the facts of this case"); *Transwestern Pipeline Co., LLC v. 46.78 Acres, More or Less, of Permanent Easement*, 2010 WL 1728936, at *3 (D. Ariz. Apr. 26, 2010) (same); *Messer v. State Farm Fire and Cas. Co.*, 2005 WL 5976565, at *4 (D. Ariz. Aug. 29, 2005) (same).

opined on "standard practice" in industry which supported his opinion).[7] Those cases are distinguishable. Wyatt has not explained, and cannot explain, how his "experience" leads to the conclusions he reached, why that "experience" is a sufficient basis for his opinions, or and how his "experience" is reliably applied to the facts of the case. To the contrary, Wyatt's only experience actually contradicts his opinions. Accordingly, his testimony is unsupported and must be excluded under *Daubert*. *See, e.g.*, *11333 Inc.*, 261 F. Supp. 3d at 1027-28. For this reason, there is no "battle of the experts." Without Wyatt's improper testimony, Plaintiff has no support for his arguments that Defendants should have suspended Lindner or validated the status of her commission on a weekly basis.

## III. CONCLUSION

For the reasons set forth above and in the MSJ, the Court should grant summary judgment in favor of Defendants.

RESPECTFULLY SUBMITTED this 23rd day of May, 2019.

> QUARLES & BRADY LLP
> Lauren Elliott Stine (#025083)
> Renaissance One
> Two North Central Avenue
> Phoenix, Arizona 85004
>
> By /s/ *Lauren Elliott Stine*
>       Lauren Elliott Stine
>
> MAYER BROWN LLP
> Lucia Nale (Ill. Bar No. 6201684)
> Thomas V. Panoff (Ill. Bar No. 6283695)
> Christopher S. Comstock (Ill. Bar No. 6299333)
> 71 South Wacker Drive
> Chicago, Illinois 60606
>
> *Attorneys for Defendants CitiMortgage/CR Title*

---

[7] *See also, e.g.*, *Cedar Hill Hardware v. Ins. Corp. of Hannover*, 563 F.3d 329, 343 (8th Cir. 2009) (expert's experience allowed him to provide testimony on accepted industry standards); *First Marblehead Corp. v. House*, 541 F.3d 36, 41-43 (1st Cir. 2008) (expert had experience related to subject of the case, which supported his conclusions); *Hangarter v. Provident*, 373 F.3d 998, 1016, 1018 (9th Cir. 2004) (finding that district court adequately probed expert's experience and found methodology to be reliable).

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2019, I electronically transmitted the attached document to the Clerk's Office using the ECF System for filing. The system will provide notice of filing to counsel for all parties of record.

/s/  Maria Marotta